UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
DEMETRIUS JENKINS,                                           :
                                                             :  **ORDER DISMISSING**
                             Petitioner,              :  **PETITION FOR WRIT OF**
                                                             :  **HABEAS CORPUS**
    -against-                                              :
                                                             :  07 Civ. 8263 (AKH)
SUPERINTENDENT JAMES T. CONWAY,                              :
of Attica Correctional Facility,                             :
                                                             :
                             Respondent.              :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Petitioner Demetrius Jenkins, currently an inmate at Attica Correctional Facility in Attica, New York, brings this petition for habeas corpus pursuant to 28 U.S.C § 2254, alleging that he is being held in state custody in violation of his constitutional rights.  The New York Supreme Court, New York County, filed its judgment on December 18, 2002, convicting petitioner after a jury trial of Murder in the Second Degree in violation of N.Y. Penal Law § 125.25 (1), and sentencing him to an indeterminate prison term of twenty-five years to life.  Petitioner challenges his conviction on the grounds that: (1) the trial court's excessive interference into the examination of witnesses and public denigration of defense counsel violated his right to a fair trial; and (2) he was denied effective assistance of counsel because defense counsel did not object to the interference and denigration by the trial court, and that the trial court's continued admonishment of defense counsel during counsel's examination of witnesses reflects that counsel did not comprehend the rules of evidence.

1

**Background**

**A. Facts Underlying the Conviction**

Police arrested petitioner on July 10, 2001, as a result of a two-year investigation of a June 7, 1999 murder that occurred in upper Manhattan. On June 7, 1999, at about 11:30 p.m., Jayson Morales ("Morales") was standing on the southwest corner of East 110th Street and Madison Avenue with Eddie Contreras ("Contreras"). Witnesses testified that petitioner, armed with a gun, walked out of an apartment building located at 1641 Madison Avenue heading towards Morales. As petitioner approached Morales, Morales reached for petitioner's gun, a struggle ensued, and petitioner then began firing the weapon. After Morales fell to the ground, petitioner stood over Morales, continuing to fire at him. Morales was pronounced dead at 12:15 a.m. at Mt. Sinai hospital.

An autopsy performed by Dr. James Gill revealed that Morales sustained seven gunshot wounds to his neck, head, left shoulder, chest, and right hip. Furthermore, the autopsy revealed wounds consistent with the witnesses' testimony that Morales was shot while laying on the ground. The cause of death was determined to be gun shot wounds to the head and neck that caused perforations of the skull, brain, and spinal cord.

About five days after the murder, petitioner returned to Buffalo, New York, where he had been residing prior to moving to New York City in April of 1999. Petitioner remained in Buffalo until his arrest on July 10, 2001.

**B. Prior Proceedings and Procedural History**

New York County Indictment 3761/01 charged petitioner with one count of Murder in the Second Degree and one count each of Criminal Possession of a Weapon in

the Second and Third Degrees.  On October 21, 2002, petitioner's jury trial commenced before the Honorable Leslie Snyder of the New York Supreme Court.

      The Government argued that brothers Luke Williams ("Williams") and Morgan Dennison ("Dennison") hired petitioner to murder Morales because Morales had engaged in a romantic relationship with Williams' girlfriend, Cecelia Vasquez, while Williams was incarcerated.  The Government also offered testimony that while incarcerated, awaiting trial for the murder of Morales, Jenkins admitted to committing the murder, at William and Dennison's behest, to a fellow prisoner, Deonte Nuckols ("Nuckols").  The Government's case relied on testimony from three eyewitnesses, Contreras, Rafael Munoz ("Munoz"), Miguel Colon ("Colon"), and fellow inmate, Nuckols.  At trial, there were several instances where Justice Snyder interrupted the prosecution or defense counsels' questioning of a witness.  Petitioner alleges in his Appellate Division brief that Justice Snyder interfered with the examination of key witnesses almost fifty different times.

      A few examples are relevant.  Petitioner cites to two examples where Justice Snyder interrupted while the Government's witnesses were trying to hedge their answers and avoid divulging information about the victim and the drug trade in the neighborhood where the shooting occurred.  There are other instances cited where Justice Snyder interrupted the Government's questioning to clarify either the question or the witness' answer.  For instance, when the Government was questioning Contreras about when he recognized petitioner as the shooter, the following exchange between the court and Contreras took place:

      PROSECUTOR:      When did you realize you knew who that person was?

3

| | |
|---|---|
| CONTRERAS: | The next day. |
| PROSECUTOR: | And- |
| COURT: | I don't know exactly what that means that you later realized who he was? |
| CONTRERAS: | Because I seen his face. I seen the person but I couldn't pinpoint where I knew the kid from. I saw his name. I didn't sit there. It wasn't somebody that I knew like a friend of mine. It was just a face that was familiar, but I couldn't pinpoint who it was at the time. |
| COURT: | So, at the time of the actual shooting, you say you saw the gun and the person you knew, you knew him from somewhere, but you didn't know from exactly where or who he was at that moment? |
| CONTRERAS: | At that moment, exactly. |
| COURT: | It came to you the next day? Don't let me put words in your mouth. Explain to the jury. |
| CONTRERAS: | Well, ask me the question. |
| PROSECUTOR: | On the next day did you have an occasion to see this person again? |
| CONTRERAS: | Yes, that's where I was. Like, okay, that's the person I recog- I was okay, that's the face I seen last night? |

(Def.'s Appellant Br. 16). On another occasion, Justice Snyder clarified a defense counsel's question to the witness:

| | |
|---|---|
| DEFENSE COUNSEL: | Did you notice the gun first before you knew, you were sure who the person was?" |
| COURT: | Were you aiming to see this person's face |

4

|  |  |
|---|---|
|  | absolutely clearly and see who it was as soon as you saw him, or did you not realize who it was until he got closer? |
| MUNOZ: | Well, Judge, jury, both, rather, because from the distance from where I was standing towards the entrance of the building, it's a pretty steep distance. So, as the person comes closer towards the light, you get to see most of what you have to know, what's in your vision, something black in the hand and a black person. |
| COURT: | So, this person who you've identified as the defendant, did you know who it was immediately, I think, is counsel's question, or did you have to get a little closer to you? |

(Def.'s Appellant Br. 17).

Additionally, petitioner alleges in his Appellate Division brief, that there were instances where Justice Snyder publicly denigrated his attorney. In his Appellate Division brief, petitioner asserts that there were approximately one hundred instances where Justice Snyder denigrated his attorney. Many of these exchanges took place outside of the presence of the jury. Only a few instances occurred in the presence of the jury. For example, during defense counsel's opening statement, Justice Snyder interrupted:

> Okay, that's it. I have directed you numerous times not to sum up. This is not the time to advocate all of these reasons. You may ask them to find your client not guilty based on the evidence and lack of evidence and that's that. This is the end of it.

(Def.'s Appellant Br. 32). Also, when the prosecutor began repeating herself, Justice Snyder told her, in front of the jury, that she was beginning to act like defense counsel. Petitioner also cites an incident when Justice Snyder told defense counsel, after objecting to one of the Government's questions: "Calm down. I don't want you to have a heart

5

attack." (Def.'s Appellant Br. 34).  Finally, after defense counsel made a reference to Pinocchio at the end of his cross-examination of Contreras, Justice Snyder told defense counsel, "[i]t is getting a little ridiculous. Sit down, please."  (Def.'s Appellant Br. 33). When charging the jury at the conclusion of the trial, Justice Snyder referred to her interaction with defense counsel during trial, and she advised the jurors that this was a "function of the adversarial system," and that "as to the chemistry of all parties involved in any particular case" it should not "hold that against either side or the defendant at any point.  It has no significance whatsoever."  (Government's Mem. of Law in Supp. of Answer Opposing Pet. for a Writ of Habeas Corpus  60).

      The jury convicted petitioner of Murder in the Second Degree on November 14, 2002.[1]  Subsequently, on December 18, 2002, the court sentenced petitioner to an indeterminate prison term of twenty-five years to life.  Petitioner timely filed an appeal with the New York Supreme Court, Appellate Division claiming that: (1) the trial court's interference with the questioning of witnesses and denigration of defense counsel violated his right to a fair trial; (2) he did not receive effective assistance of counsel; and (3) the trial court abused its discretion by punishing petitioner for exercising his right not to cooperate with law enforcement and failed in its duty to consider the significant mitigating factors that petitioner had no prior record, was sixteen at the time of the incident, and under prosecution's theory of the case was influenced by those older and more culpable, and his sentence should be vacated or, in the alternative, reduced in the interest of justice.

      On January 17, 2006, the Appellate Division unanimously affirmed petitioner's conviction finding that: (1) the petitioner's complaints about Justice Snyder were

---

[1] The court did not submit the weapons counts to the jury.

6

unpreserved, (2) it was unable to rule on the ineffective assistance of counsel claim because it concerned matters outside the record; and (3) the record did not establish that petitioner's sentence was improper. People v. Jenkins, 807 N.Y.S.2d 90 (N.Y. App. Div. 1st Dept. 2006). The court also held that all of petitioner's claims were without merit. Id. Subsequently, petitioner sought leave to appeal to the New York Court of Appeals, but the New York Court of Appeals denied the appeal on March 23, 2006. People v. Jenkins, 847 N.E.2d 379 (N.Y. 2006).

On January 12, 2007, petitioner moved pro se to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10 (2005) upon the ground that he was denied effective assistance of counsel as provided for in both the New York State and the federal Constitutions. The Government opposed this motion. The New York Supreme Court held that petitioner "is raising an issue which was determined on the merits by his unsuccessful appeal," and denied the motion on April 16, 2007.[2] On June 20, 2007, the Appellate Division denied leave to appeal.

Petitioner then filed a habeas corpus claim with this court pursuant to 28 U.S.C. §2254. First, he claims that the trial court's interference into the examination of witnesses and the trial court's public denigration of defense counsel violated his right to a fair trial. Second, he asserts that he was denied the effective assistance of counsel as provided by the Sixth Amendment of the United States Constitution.

---

[2] N.Y.Crim. Proc. Law §440.10(2)(a) (2006) provides that: "Notwithstanding that provisions of subdivision one, the court must deny a motion to vacate a judgment when the ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there as been a retroactively effective change in the law controlling such issue"

7

**Discussion**

Persons in state custody resulting from a conviction in state court may petition for federal habeas corpus relief on the ground that their custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The application cannot be granted unless the petitioner has exhausted all available state court remedies, or the state remedies are absent or ineffective. 28 U.S.C. § 2254(b)(1). The court may deny a petition on the merits regardless of whether state remedies have been exhausted. 28 U.S.C. §2254(b)(2). The court cannot grant the writ where the state court adjudicated the claim on the merits unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable interpretation of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The court must also presume that the state court correctly determined factual issues unless the applicant rebuts the presumption with clear and convincing evidence. 28 U.S.C. §2254(e)(1).

**A. Petitioner's Denial of Fair Trial Claim**

Petitioner claims that the trial court's interference into the examination of witnesses coupled with the trial court's public denigration of defense counsel violated his right to a fair trial. The New York Supreme Court, Appellate Division ruled that petitioner's claim as to the trial court's interference with the examination of witnesses was unpreserved.[3] Jenkins, 807 N.Y.S. at 90. Furthermore, the Appellate Division found

---

[3] N.Y. Crim. Proc. Law §470.05(2)(1994) provides the following: "for purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need

that petitioner's denigration claim was also unpreserved because the one objection made by defense counsel was "insufficiently specific to preserve the issue." Id. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred." Coleman v. Thompson, 501 U.S. 722, 750 (1991). For a petitioner to be barred from federal review, the appellate court's decision must be based on an independent state procedural bar. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (citing Harris v. Reed, 489 U.S. 255, 263 (1989)). Additionally, "reliance on state law must be 'clear from the face of the opinion.'" Id. at 809 (quoting Coleman, 501 U.S. at 735). Absent an express reliance on state grounds by the state appellate court, if the last state court opinion fairly appears to rely on or be "interwoven" with federal law, there is a presumption that the state relied on federal law, and the claim will be preserved for federal review. Coleman, 501 U.S. at 735.

Here, the Appellate Division relied expressly and explicitly on state procedural laws in denying review of petitioner's claim that the trial court denied him a fair trial. The state court relied solely on state case law. See Jenkins, 807 N.Y.S.2d at 90. New York law requires that a defense attorney must enter an objection to the trial judge's conduct as soon as at is "clear that the Judge intends to exceed his permissible role and assume the advocate's function." People v. Yut Wai Tom, 53 N.Y.2d 44, 55 (N.Y. 1981). To be sure, the Appellate Division did express its opinion that the claims would

---

not be in the form of an 'exception' but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered."

9

be rejected if it were to consider the claims on the merits. Jenkins, 25 A.D.3d at 445. However, so long as the state court made its ruling expressly based on state procedural law, federal habeas review will be denied even if the state court rules "in the alternative on the merits of the federal claim." Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)). Therefore, because the last state court to review the claim based its decision on New York procedural law, this court is precluded from considering petitioner's claim that he was denied a fair trial due to the trial judge's interference with the questioning of witnesses and her public denigration of petitioner's counsel.

Even if petitioner's claims were not procedurally defaulted, he still fails to demonstrate that he was denied a fair trial due to the trial judge's actions. The test for whether a trial judge's interference with witness questioning and whether the trial court improperly denigrated defense counsel is the same. See United States v. Nazzaro, 472 F.2d 302, 303 (2d Cir. 1973). The court considers "whether the jury was so impressed with the judge's partiality to the prosecution that it became a factor in determining the defendant's guilt, . . . or whether it appeared clear to the jury that the court believed the accused is guilty." United States v. Amiel, 95 F.3d 135, 146 (2d Cir. 1996) (quoting Nazzaro, 472 F.2d at 303).

A petitioner alleging that a trial judge interfered with the questioning of witnesses faces a difficult task. Gayle v. Scully, 779 F.2d 802, 806 (2d Cir. 1985). Without a showing that the interference was significant and adverse to the defendant, factors such as the quantity of questions asked by the trial judge, questions that elicit information that may be detrimental to the defense's case, or requesting clarification of

10

witness answers which are beneficial to the prosecution are not enough to show that a trial judge's conduct violated a defendant's right to a fair trial. Id. In his brief to the Appellate Division, petitioner asserts that the trial judge interfered with the examination of witnesses on "almost fifty different occasions" and "elicited essential facts, bolstered key identification testimony, and generally strengthened the overall testimony of the prosecution's most important witnesses." (Def.'s Appellant Br. 47-48).

The petitioner, however, made no showing that these instances were adverse. While Justice Snyder did elicit testimony from key witnesses regarding their account of the night of the murder, her questions clarified accounts and were neutral. For instance, Justice Snyder elicited from the Government's witness that the victim had a violent reputation in the community, and had a reputation as a drug dealer. When the witness, Colon, continued to disclaim such knowledge, Justice Snyder elicited that the witness' disclaimer of facts helpful to the defense was not credible. The illustrations of Justice Snyder's elicitation of facts helpful to the defense, show her motive to clarify for the jury and not to favor either the prosecution or the defense. Petitioner has no basis to complain this "substantially and adversely affected" his right to a fair trial. See United States v. Brandt, 196 F.2d 653, 657 (2d Cir. 1952) (stating that trial judge's questions which "appeared mainly to underline inconsistencies in the positions or to elicit admissions on the bearing on the credibility of defense witnesses" violated petitioner's due process rights); See also Nazzaro, 472 F.2d at 310 (stating that hostile questioning of defense witnesses coupled with little interruption in the questioning of the Government's witnesses denied petitioner of a fair trial).

11

As to petitioner's denigration of counsel claim, the issue turns on whether the denigration was prejudicial to the extent where it appears that the court believes the defendant is guilty as to deny petitioner a fair trial. <u>Nazzaro</u>, 472 F.2d at 303. In evaluating whether a defendant received a fair trial, it is appropriate to consider whether defense counsel provoked the trial judge's admonishment by continuing to engage in activity that the judge had previously warned defense counsel to avoid. <u>United States v. Pisani</u>, 773 F.2d 397, 404 (2d Cir. 1985). Additionally, fairness will be evaluated by how many comments, if any, were made in the presence of the jury and any instruction by the trial judge to the jury to ignore the interaction between attorneys and the court. <u>United States v. Robinson</u>, 635 F.2d 981, 984-85 (2d Cir. 1980).

In petitioner's case, many instances complained of occurred outside of the jury's presence. Thus, there is no possibility that the chastisement of defense counsel could have prejudiced the jury to believe that Justice Snyder was partial to the Government's case. There were, however, other instances where defense counsel was reprimanded in front of the jury. However, these instances followed events where defense counsel was engaging in activity that the court had already warned him about outside of the jury's presence. Furthermore, Justice Snyder instructed the jury, not only in her final charge, but also in preliminary instructions, that her statements were not evidence. She instructed the jury that it should not consider whether one counsel was doing a better job than the other, that her comments were part of the adversarial system, and that the jury should not consider them in its deliberations. Justice Snyder's comments did not prejudice petitioner in a way that denied him a fair trial. Petitioner's claim is without merit.

**B. Petitioner's Ineffective Assistance of Counsel Claim**

In petitioner's Appellate Division brief, he claims that the court's frequent references to his attorney's lack of comprehension of the rules of evidence, and his attorney's failure to object to the court's continued interference and denigration of him, demonstrate that petitioner was denied effective assistance of counsel. The Appellate Division held that the claim was not properly before it as it involved matters outside the trial record. Jenkins, 807 N.Y.S.2d at 91. It ruled, nonetheless, on the basis of the trial record, that his claim lacked merit because defense counsel's actions seemed to be strategic. Id. Subsequently, petitioner raised the claim in a N.Y. Crim. Proc. Law § 440.10 motion. The trial court denied the motion holding that petitioner was simply raising claims that had already been determined on the merits. Petitioner sought leave to appeal to the Appellate Division. The Appellate Division denied this application. Thus, petitioner's ineffective assistance claim has been exhausted and decided on the merits.

The issue is whether the trial court incorrectly applied the Supreme Court standard laid out in Strickland v. Washington, 466 U.S. 668 (1984), to petitioner's ineffective assistance of counsel claim. To prevail on an ineffective assistance of counsel claim, a petitioner must establish: (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense. Id. Counsel's errors must be shown to have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. In evaluating a petitioner's counsel, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Furthermore, "acts or omissions by counsel that might be

considered sound trial strategy do not constitute ineffective assistance." Mason v. Scully, 16 F.3d 38, 42 (2d Cir. 1994) (citing Strickland, 466 U.S. at 689).

In his Appellate Division brief, petitioner alleges three examples of how his defense counsel was ineffective.  First, petitioner asserts that his counsel's "inability to adhere to the basic rules of evidence and conduct proper cross examinations of the prosecution's witnesses" is evidence of his incompetence (Def.'s Appellant Br. 80).  The Appellate Division ruled that the record reflected that counsel's conduct and line of questioning were part of a strategy that would "introduce evidence or innuendo which he could not otherwise have put before the jury." Jenkins, 807 N.Y.S.2d at 91.  Defense counsel sought to elicit hearsay as part of his trial strategy.  In particular, defense counsel was seeking to elicit testimony that would bolster his claims that petitioner was not the shooter.  He sought testimony that would show that Morales had several enemies due to his participation in the drug trade in the neighborhood and that the Government's witnesses lacked credibility as they all were criminals who were given certain advantages by the government to testify.  Many of his questions called for hearsay, and the Government objected appropriately.

As a result of these objections, defense counsel requested a suggested format for questioning.  Petitioner offers this as proof of defense counsel's inability to participate in the adversarial process.  Rather, it seems more like a strategy to give him leeway to ask impermissible questions.

It is not the role of this court to review defense counsel's tactical judgments in developing his case. United States v. Luciano, 158 F.3d 355, 660 (2d Cir. 1998) ("the conduct of examination and cross-examination is entrusted to the judgment of the lawyer,

and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken"); Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) ("Decisions about 'whether to engage in cross-examination, and if so to what extent and manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim."(quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987))). In fact, defense counsel did receive a format for questions, and thus was able to continue his questions without being interrupted by objections from the Government. This enabled him to employ his strategy and develop his case by eliciting testimony showing that there were other people who may have wanted to kill Morales. Thus, this not only shows that defense counsel was apt at participating effectively in the trial process, but that there is little possibility that petitioner was prejudiced by having put forth improper questions.

      Second, petitioner contends that the fact that his attorney failed to object to the court's continued interference and denigration of him is proof of his ineffectiveness. As previously discussed, many of Justice Snyder's interruptions were to clarify witnesses' testimony and were within the bounds of the trial court's role. See supra Part A. Additionally, her reprimands were a result of defense counsel's failure to adhere to her directions. In light of these circumstances, Justice Snyder's actions were justified, and petitioner's counsel had no reason to object. Defense counsel cannot be deemed ineffective for failing to object to proper actions of the court that did not deprive petitioner of a fair trial. See Etoria v. Bennett, 292 F.Supp. 2d 456, 474 (E.D.N.Y. 2003) ("None of the statements and questions appear improper nor is there any reasonable likelihood that a timely objection to the statements would have been sustained. The

15

prosecutor's questions did not deprive petitioner of a fair trial. Defense counsel was not ineffective for having failed to object to them.").

Even if counsel should have objected, petitioner fails to show that this failure constitutes ineffective assistance of counsel. Defense counsel pursued a strategy throughout the trial and made objections in other instances when appropriate. Petitioner cannot show that a failure to object to the trial court's actions in particular instances rendered defense counsel ineffective as to violate his Sixth Amendment right. See Rickenbacker v. Warden, Auburn Corr. Facility, 550 F.2d 62, 67 (2d Cir. 1976) ("That he [defense counsel] let one [objection] slip by is not, we think, sufficient to establish incompetence. The Courts cannot guarantee errorless counsel or counsel who cannot be made to seem ineffective by hindsight.").

Because petitioner fails to demonstrate that defense counsel's failure to object to Justice Snyder's actions and defense counsel's improper questioning of witnesses were deficient actions, and the Strickland standard is a two prong test requiring both aspects be met, there is no need to consider whether petitioner was in fact prejudiced by these actions. Mercado v. United States, No. 04 Civ. 10208, 2005 U.S. Dist. LEXIS 14671, at *9-10 (S.D.N.Y. July 19, 2005). In any event, he was not prejudiced.

Finally, petitioner claims that his attorney failed to advocate for him at sentencing. Petitioner alleges that his attorney acted deficiently in failing to raise three mitigating factors at his sentencing: (1) petitioner was only sixteen at the time of the murder, (2) petitioner did not have a prior criminal record; and (3) petitioner was influenced by people who were older and more culpable. The reasonableness of defense counsel's duty to investigate and present mitigating evidence is governed by "[p]revailing

16

norms of practice as reflected in American Bar Association standards and the like . . ." Wiggins v. Smith, 539 U.S. 510, 522 (2003)(quoting Strickland, 466 U.S. at 688-89). The American Bar Association provides that defense counsel has "a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing." Wiggins, 539 U.S. at 525 (quoting ABA Standards for Criminal Justice 4-4.1, commentary, p 4-55). However, defense counsel is not required to "investigate every conceivable line of mitigating evidence" or raise all mitigating evidence at trial. Edwards v. Greiner, No. 03-CV-6124, 2006 WL 2355845, at *8 (E.D.N.Y. Aug. 15, 2006)(citing Wiggins, 539 U.S. at 533). While defense counsel's failure to raise these mitigating factors is questionable, he did continue with his trial strategy at sentencing by asserting that petitioner was innocent. Because there is no established constitutional requirement that a defense counsel present all mitigating evidence, and a petitioner must overcome a strong presumption that defense counsel's actions are part of a sound trial strategy, defense counsel's conduct did not fall below a standard of reasonableness. See Id. at *7-9.

More important, petitioner fails to establish that defense counsel's deficient behavior prejudiced him at sentencing. The case against petitioner was strong. His youth, and the culpability of other participants were evident. Defense counsel's failure to argue the above would not have changed anything. See Id. at *2 (Court sentenced defendant for life without parole for a murder, committed during a robbery, even though mitigating evidence was presented that defendant was young and lacked prior convictions). Justice Snyder commented at sentencing that petitioner was "totally devoid of feelings, totally devoid of values, having no conscience, no remorse." (Government's

17

Mem. of Law in Supp. of Answer Opposing Pet. for a Writ of Habeas Corpus 73). Clearly, she regarded petitioner's age and lack of prior convictions as less important than the cold-bloodedness of the murder. See Edwards, 2006 WL 2355845, at *2 (At sentencing, trial judge described petitioner as having "a complete lack of understanding of the value of human life and complete lack of understanding that even though somebody might be sick and addicted to drugs they still have a right to live"). Petitioner was not prejudiced by any deficiency of defense counsel. The argument of ineffective assistance of counsel is without merit. Strickland, 466 U.S. at 694 ("Defendant must show that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

### C. Petitioner's Request for an Evidentiary Hearing

Petitioner requests an evidentiary hearing to develop facts about his attorney's trial strategy. However, there is no purpose to be served. His request is denied.

### Conclusion

The petition for a writ of habeas corpus is denied. I deny a certificate of appealability, for there has been no substantial showing of the denial of a constitutional right. Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Clerk shall mark the case closed.

SO ORDERED.

Dated: New York, New York
       June 19, 2008

ALVIN K. HELLERSTEIN
United States District Judge

18